**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **FRANK PRIETO,** | § | |
| **Petitioner** | § | |
| | § | |
| **VS.** | § | **C.A. NO. C-06-88** |
| | § | |
| **DOUG DRETKE, DIRECTOR,** | § | |
| **TEXAS DEPARTMENT OF CRIMINAL** | § | |
| **JUSTICE–INSTITUTIONAL DIVISION,** | § | |
| **Respondent** | § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se*, petitioner filed this habeas corpus petition pursuant to 28 U.S.C. §§ 2241 and 2254 on January 18, 2006 (D.E. 1).

Petitioner makes the following due process claims in reference to a disciplinary hearing which resulted in the imposition of punishment: (1) The charging officer lied about what happened in her initial offense report; (2) Another officer lied in his report about the incident; (3) There was insufficient evidence on which to base a conviction and (4) The hearing officer erred by relying solely on the charging officer's report to find petitioner guilty. Respondent filed a motion for summary judgment on April 20, 2006 (D.E. 12) to which petitioner did not respond.

## BACKGROUND

Petitioner currently is serving a sentence of life without parole for the offense of injury to a child with a deadly weapon (D.E. 12, Commitment Inquiry).[1] He does not complain about his holding conviction, but challenges the results of disciplinary case number 20050299306, where he

---

[1]All of the evidence submitted in support of respondent's motion for summary judgment is located at D.E. 12 and 13.

was accused and found guilty of assaulting an officer without a weapon (D.E. 13, Disp. Hearing Recs., pp. 1-2).

In the offense report, the charging officer, M. Ramirez, wrote that while she was doing "egress/ingress" she noticed that petitioner had a soft drink bottle filled with water and she ordered him to give it to her.  He placed it under the table and told Ramirez to get it herself.  Ramirez grabbed the bottle and asked petitioner for his identification card.  He did not give it to her or reply. She then saw his shirt with his identification in it on top of the table behind him.  Ramirez moved to pick up his identification and petitioner turned around and slapped her right hand and told her she should not have tried to pick it up (D.E. 13, Disp. Hrg. Recs., p. 2).  Another officer, C. Polk, corroborated Ramirez's allegations, except that he said Ramirez jumped back in time not to be slapped.  He said he saw petitioner swing to hit Ramirez, but did not actually see him hit her (D.E. 13, Disp. Hrg. Recs., p. 4).  During the pre-hearing investigation and at the hearing, petitioner maintained that he did not slap Ramirez's hand but he did cover his pocket with his hand and their hands touched (D.E. 13, Disp. Hrg. Recs., pp. 3, 9-10).

Petitioner was found guilty based on the charging officer's report, the witness statement and the charging officer's testimony at the hearing.  He was punished with the loss of 45 days of commissary and recreation privileges, solitary confinement for 15 days, a reduction in line class from S4 to L3 and the loss of 30 days of good time (D.E. 13, Disp. Hrg. Recs., p. 1).

Petitioner filed a Step 1 grievance on July 15, 2005, complaining that the evidence at the hearing was inconsistent and insufficient to support a finding of guilt.  He received a response from Warden Crites on August 23, 2005, affirming the disciplinary decision (D.E. 13, Disp. Grv. Recs., pp. 1-2).  Petitioner filed a Step 2 grievance on August 30, 2005 making essentially the same arguments he made in his Step 1 grievance, although he added that if he were going to be punished

for lightly brushing the hand of an officer, in a similar situation he might as well brutally assault the officer because the punishment would be the same (D.E. 13, Disp. Grv. Recs., pp. 3-4). The grievance was returned to him with a notation that he made malicious use of vulgar, indecent, or physically threatening language (D.E. 13, Disp. Grv. Recs., p. 4).

Petitioner then filed a second Step 1 grievance, complaining that he did not feel safe around the prison personnel involved in the disciplinary matter because he thought he was a prime target for future mistreatment, retaliation and verbal or physical harassment (D.E. 13, Disp. Grv. Recs., pp. 5-6). Warden Crites responded that the grievance was redundant and referred petitioner to his earlier grievance (D.E. 13, Disp. Grv. Recs., p. 6). Petitioner filed a Step 2 grievance saying his grievance was not redundant and that in the future he would take whatever action he deemed appropriate in the face of threats from prison employees. Prison authorities replied that an investigation was conducted into petitioner's claim and there was no evidence that his life was in danger (D.E. 13, Disp. Grv. Recs., pp. 7-8).

In his motion for summary judgment, respondent argues that petitioner is not entitled to relief because he is ineligible for mandatory supervision release and has otherwise failed to state a claim for habeas relief. Respondent reserved the right to argue whether petitioner has exhausted his administrative remedies.

## APPLICABLE LAW

**A. Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court described the

limited instances in which prison inmates can make out a claim that a liberty interest has been taken

without due process.

> The time has come to return to the due process principles we believe were  correctly
> established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)]
> and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976)].  Following Wolff, we
> recognize that States may under certain circumstances create liberty interests which
> are protected by the Due Process Clause.  But these interests will be generally
> limited to freedom from restraint which, while not exceeding the sentence in such an
> unexpected manner as to give rise to protection by the Due Process Clause of its own
> force, nonetheless imposes atypical and significant hardship on the inmate in relation
> to the ordinary incidents of prison life.

Id.  (internal citations omitted).  The Supreme Court held in Sandin that confinement in disciplinary

segregation for twenty-three hours and ten minutes per day "did not present the type of atypical,

significant deprivation in which a state might conceivably create a liberty interest."  Sandin, 515

U.S. at 486, 115 S.Ct. at 2301.  The Court focused on the nature of the liberty interest at issue,

finding that conditions of disciplinary segregation did not differ significantly from conditions in

administrative segregation and protective custody.  Id.

### (1) Time Earning Status

To the extent petitioner seeks reinstatement of his line class, he has not raised a due process

concern.  Generally a lower classification of line class limits an inmate's ability to earn good time

credits, which could have an effect on the amount of time he is in custody.  Even so, "such

speculative, collateral consequences do not create constitutionally protected liberty interests."

Luken v. Scott, 71 F.3d 192 (5th Cir. 1995)(citing Meachum v. Fano, 427 U.S. 215, 229, n. 8, 96

S.Ct. 2532, 2540, n. 8, 49 L.Ed.2d 451 (1976)).  "'Prisoners have no protectable property or liberty

interest in custodial classifications.'" Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999)(citing

Whitley v. Hunt, 158 F.3d 882, 889 (5th Cir. 1998)).  See also Malchi v. Thaler, 211 F.3d 959 (5th

Cir. 2000)(holding that timing of inmate's release is too speculative to afford him a constitutionally

4

cognizable claim to the right to a particular time-earning status, which right the Texas legislature has specifically denied creating). Accordingly, petitioner is not entitled to habeas corpus relief based on his line class status.

### (2) Loss of Good time

Petitioner also seeks reinstatement of his lost good time. To the extent petitioner contends that the loss of good time affects his parole eligibility he fails to state a basis of relief. "In Texas, it is entirely speculative whether an inmate will actually obtain parole, inasmuch as there is no right to be released on parole. . . . In fact, we have expressly held that there is no constitutional expectancy of parole in Texas." Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997). Without such an expectation, petitioner is not entitled to due process following the loss of good time credits insofar as the loss affects his eligibility for parole.

In addition to the parole scheme in Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and control of the pardons and paroles division. Id., 104 F.3d at 768 (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)). Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. TEX. GOV'T CODE ANN. §508.147 (Vernon 2002).

The Fifth Circuit has determined that prior to September 1, 1996, the mandatory supervision program created a constitutional expectation of early release. Malchi v. Thaler, 211 F.3d 953, 957-958 (5th Cir. 2000)[2]. The mandatory supervision scheme was revised in 1998 and the language in

---

[2]Accordingly, the loss of good time credits as the result of a disciplinary hearing implicates the higher levels of due process contemplated by the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). (1) Written notice of the charges must be given to the inmate; (2) The inmate must be allowed to call witnesses and

the new section was designed to avoid creating a protected liberty interest.  Hudson, 242 F.3d at 536, n. 1.  However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does.  Id. at 536.  Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision.  Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Some inmates are not eligible for release to mandatory supervision because of the nature of their offense.  Petitioner was convicted of injury to a child with a deadly weapon in violation of TEX. PENAL CODE § 22.04, a first degree felony, and so is ineligible for release to mandatory supervision (D.E. 1, Commitment Inquiry; TEX. CRIM. PRO. Art. 42.18, Sec. 8(c)(8)(West 1992)).  Because petitioner is not eligible for release to mandatory supervision, he has no constitutional expectancy of early release and the Wolff due process considerations are not implicated.  Madison, 104 F.3d at 769.  Accordingly, he is not entitled to habeas corpus relief.

## B.  Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed.  See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial

---

present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision.  Wolff, 418 U.S. at 564, 94 S.Ct. at 2979.

of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on the merits.  If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA.

## RECOMMENDATION

Based on the foregoing, it is respectfully recommended that respondent's motion for summary judgment (D.E. 12) be granted and petitioner's cause of action for habeas corpus relief be dismissed.  It is further recommended that should petitioner seek a Certificate of Appealability, it be denied.

Respectfully submitted this 16th day of June, 2006.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).

8